ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* TYUS.

Opinion delivered October 31, 1910.

MALICIOUS PROSECUTION—BURDEN OF PROOF.—One who sues for malicious prosecution must establish not only that he was innocent of the charge but also that there was no probable cause for the prosecution.

Appeal from Ashley Circuit Court; *Henry W. Wells,* Judge; reversed.

### STATEMENT BY THE COURT.

The appellee was a section foreman on appellant's railroad. He sued appellant for malicious prosecution, alleging that on the 8th day of April, 1908, plaintiff was in the employ of defendant railroad company as section foreman, and was stationed at Portland, Arkansas. That on said day the said defendant through its agent caused him to be arrested under the false charge of obtaining money under false pretenses, and on said day he was discharged from the employment of said company. And said defendant caused said false charge to be referred to the grand jury of Ashley County, and said grand jury ignored said charge, and refused to find any bill against said plaintiff, and plaintiff denies that any probable cause existed. That said charge was false and untrue, and that by reason of said arrest and discharge he had been damaged in the sum of $600 for loss of employment, for injury to his character and reputation, $2,000, and for the humiliation and shame of said charge, the sum of $2,500. That he is now advanced in years, has spent practically his life in the service of the railroad company, and has always borne a good reputation, and has always to the best of his ability faithfully and honestly performed the service entrusted to him.

The appellant denied all the material allegations, and alleged: That the said plaintiff was arrested on a charge of obtaining money under false pretenses from said defendant company, and that at the time the affidavit was made the agent and employees of said company had reasonable grounds to believe, and did believe in good faith, that the said plaintiff had made false

and fraudulent entries upon his payrolls and padded the same and carried straw men thereon, and obtained money from said defendant company by reason of said false and fraudulent pretenses; and that said agent had reasonable grounds to believe that said pretenses were false and fraudulent, and that said affidavit and arrest were made in good faith and without malice and upon reasonable grounds to believe that said plaintiff had been guilty of the charges so made, and that said arrest was made in good faith, believing said charges to be true and that they had reasonable grounds therefor.

The evidence on behalf of appellee tended to prove that he was arrested on a warrant sworn out by the division engineer who had supervision over the appellee, who was a section foreman. The warrant charged appellee with the crime of obtaining money under false pretenses. Appellee was taken before a magistrate and waived examination, giving bond for his appearance before the circuit court to answer any charge that might be brought against him. Appellee was not indicted by the grand jury. It investigated the charge, but found no bill. The man who swore out the warrant did not appear before the grand jury.

It was the duty of appellee as section foreman to keep a record of the laborers he employed. The record should show the time the laborers worked. He entered the time in a book kept for that purpose with the name of each laborer. It had been the custom of the road since appellee had been in its employ, for many years, to close up the time book on the night of the 27th of each month, and the number of men working on the 27th was reported as working to the end of the month. The appellee explained as follows:

"On the time book was the 28th, 29th, 30th and 31st, and sometimes these men wouldn't work, and it was the rule to wire their time off. I had three men, after the time book was made out, that didn't work the 28th, 30th and 31st of March; I wired the roadmaster to take the 28th, 30th and 31st from the payroll of these men, and if they didn't take it these three men got pay for work they didn't do. I sent the roadmaster a message. We mail our time books to the roadmaster, and he forwards them to the division engineer. As section boss, I had nothing to do with the paying of the hands. None of the money

came into my hands for the purpose of paying the hands; they were paid by check after they discontinued running the pay-car. I was not guilty of the charges made in these papers."

The time books appellee kept were identified and introduced. General instructions were entered in these books, showing how they should be kept. Among these instructions was the following:

"1.    Foremen must enter information daily."

"2.    Time must be shown on the date the labor was actually performed. Foremen must return no time except for labor actually performed."

The record of the time of several laborers as kept by appellee was then introduced. Appellee testified that it was correct. It reported that the laborers, naming them, had worked a specified number of hours for a specified number of days, and that each was due a certain sum for the total number of hours he had worked during the months reported. Appellee testified that he loaned several of the laborers money, and that he reported this as for board due him; that appellant allowed him to collect money that he had loaned the laborers, deducting the amount thus due him from the amount of their wages.

Appellee also testified: "On March 19 I had five men, seven with me and the lamptender. I reported six men working that day; I had five." Appellee reported that a man by the name of Abe Washington worked during the month of March, 1908, eight days of ten hours each, making a total of eighty hours, and that the amount due him for his labor was $10, and that Washington was due appellee $6.50. Appellee reported that Dan Parker had worked during the month of March five days of ten hours each, making a total of fifty hours, for which the amount due him was $6.25, from which should be deducted in appellee's favor for borrowed money, $3.90. He reported that Harrison Parker worked in February, 1908, sixty-eight hours, and that there was due him $8.50. Appellee reported that the sum deducted in his favor for board was $6.15, making amount payable to Parker $2.35.

Appellee further testified that he was allowed 65 per cent. off of the amount due the laborers for their board. He reported that John West worked for him 245 hours during the month of

March, 1908; John West borrowed money from him in the sum of $8.65, but did not board with him at all. He reported the sum and deducted it as board. Jim Almond was reported as having worked 175 hours. He did not board with appellee, but appellee let him have goods and money amounting to the sum of $21.80, and deducted it out of the sum which he reported as due Almond for his wages.

R. L. Morris, the division superintendent, testified that when he went to the Valley Division the superior officers of the road informed him that the section foremen and extra gangs were padding their payrolls. They told him his duty would be "to get behind the section foremen, and get the money and put it on the track." His duty was to get a statement and check the foremen. He tells how they proceeded to check the foremen, and, without going into detail, his testimony shows that he ascertained that appellee on different days was working a less number of men than his time book showed; for-instance, on one day, 19th of March, 1908, his time book showed that he had worked five men, when in fact they found that he only worked two men that day. On the 25th he checked appellee's gang, and found four men on his section. His time book showed that on that day he had seven men at work. The roadmaster was instructed after that to stay with that section and watch it closely. The roadmaster reported to Morris as follows: "On the days I have checked Foreman Tyus I find that he carries on his payroll from two to three more men than are actually on the job." The check of the roadmaster and the general road-master showed that appellee carried more men on his payroll than were actually working. Witness went to Portland with this information in hand, questioned the negroes relative to the time they had worked. He had the laborers' statements reduced to writing, and had them make affidavit before the magistrate. Their sworn statements correspond with the statement given witness by the roadmaster and the general roadmaster and with witness' own check. He therefore made affidavit for the arrest of appellee. Witness was not personally acquainted with appellee, had never talked to him previous to the information brought to him showing that appellee was "carrying dead men" on his payrolls; witness was thoroughly convinced he was car-

rying "dead men." Witness then continued his testimony as follows:

"The payroll shows that John West made during the month, according to the time turned in by Foreman Tyus, twenty-four and a half days, making a total of $30.60. John West got $21.70 paid by check. When I talked to John West he told me that he made about sixteen or seventeen days—not to exceed eighteen days. Tyus put in twenty-four five-tenths days. West testified to me that he had been sick twice during the month, and that he was unable to work during these two spells, so he only put in sixteen or seventeen days. The payroll shows paid to Mr. Tyus on deduction for board, $8.72. During the month of March the payroll shows that Mr. Tyus drew $65.35 for board. Dan Parker never got anything that month. He never signed any payroll at all that month. The way Mr. Tyus got this board money was this: John West made seventeen and three-quarter days, as he claims that would give John West $21.70. Then Mr. Tyus would tie onto that whatever amount it would be— $8.65 is shown on this roll. He would turn in on his time book the correct time for John West $21.70; John West would then draw his check for $21.70, which was actually coming to him. It would be all right as far as John knew; but this $8.60 was turned in for board against John. Mr. Tyus added in sufficient amount of days to make this $8.65, and take that as board deduction. John didn't sign this as authorizing the board deduction, and didn't authorize it. He told me that, and made affidavit to it."

The testimony of the witnesses John West, Dan Parker, Jim Almond and Harrison Parker showed in effect that they had worked as section men under appellee, that he had reported more time than they had worked, that he had not loaned them the money he had reported, and that they had not boarded with appellee. Their testimony tends to prove that what they had reported to Morris and had made affidavit to before the magistrate was correct. Two of these witnesses testified that they did not know a man by the name of Abe Washington, who was reported by appellee to have worked on the section at the same time they worked, that no such man worked there, and one of these told Morris that no such man as Abe Washington worked

there. The court correctly instructed the jury as to the essential elements of a malicious prosecution.

The jury returned a verdict of $3,000 in favor of appellee. Judgment was entered against appellant in that sum, and it appeals.

*W. E. Hemingway, E. B. Kinsworthy, E. A. Bolton* and *James H. Stevenson,* for appellant.

There is no evidence of want of probable cause for the prosecution of appellee. The verdict is therefore without evidence to support it. 2 Greenleaf on Ev., § 454; 33 Ark. 316; 32 Ark. 763. Proof of plaintiff's innocence of the charge made against him does not establish a lack of probable cause. 33 Ark. 322; 60 Kan. 4.

*George W. Norman* and *James C. Norman,* for appellee.

Failure of the grand jury to find an indictment against plaintiff was *prima facie* evidence of want of probable cause, sufficient to throw upon defendant the burden of proving the contrary. 41 N. J. L. 22; 39 S. E. 661; 114 Fed. 317; Cooley on Torts, 184; 49 N. W. 106; 27 Am. St. Rep. 25; 38 *Id.* 853; 28 Atl. 135; Newell, Mal. Pros. 283; 23 So. 447; 59 Mo. 557; 76 Mo. 660; 50 Mo. 83. Proof of want of probable cause is to prove a negative, which requires only slight evidence. Newell, Mal. Pros., 282, par. 7.

WOOD, J., (after stating the facts). One of the grounds of the motion for new trial was that the verdict was contrary to the evidence. The court should have granted the motion on that ground. In *Chrisman* v. *Carney,* 33 Ark. 316, 322, we said: "The mere innocence of the party accused will not sustain an action for malicious prosecution, if the circumstances be such as to induce the prosecution to suppose the party proceeded against to be guilty. "For," as Blackstone says, "it would be a very great discouragement to the public justice of the kingdom if prosecutors, who had a tolerable ground of suspicion, were liable to be sued at law whenever their indictments miscarried, and therefore any probable cause for preferring it is sufficient to justify it." 3 Blk. Com., 126-7. And in *Lavender* v. *Hudgens,* 32 Ark. 763, this court held that: "The want of probable cause is a material averment in an action for

malicious prosecution; and, though negative in form and character, it must be proved by the plaintiff, when put in issue, by some affirmative evidence." The undisputed facts of this record show that there was "a probable cause" for the prosecution that was institued by appellant against appellee in the justice's court. The uncontroverted evidence shows that Morris, the agent of appellant who instituted the prosecution, was in possession of information that warranted him in suspecting that appellee was guilty of defrauding appellant by obtaining money in the manner disclosed by the evidence. The undisputed facts certainly warranted one charged with the duties of the division engineer in believing, or at least strongly suspecting, that appellee, in the nomenclature of the craft, "had padded the payrolls." That was sufficient to justify the criminal proceeding against him. If the evidence upon which Morris acted was not disclosed in the record, then the fact that the grand jury did not find a true bill against appellee might be taken, at least, as presumptive evidence that there was no probable cause for the proceedings against appellee. But the record discovers all the facts, and shows what prompted Morris to institute the criminal proceedings.

In our opinion these facts show beyond doubt or controversy that the suspicions of Morris were well grounded. While slight and groundless suspicion would not be sufficient, a belief or suspicion, well founded or based upon reasonable and probable ground, would be.

This being true, the liability of appellant is not established. The evidence of appellee, at most, only tends to show that he was innocent of the crime. But the burden was on him to show want of probable cause. The evidence does not even tend to show that there was lacking a probable cause for the prosecution. But, on the contrary, the affirmative and undisputed evidence shows the existence of such cause.

The judgment is therefore reversed, and the cause is dismissed.