GAZZOLA *v.* NEW.

4-3965

Opinion delivered October 7, 1935.

*C. F. Greenlee* and *W. W. Sharp,* for appellant.

*Emmet Vaughan* and *D. D. Panich,* for appellee.

BUTLER, J. J. J. New brought suit· for malicious prosecution against John Gazzola, the appellant, and

J. L. Woodfin. At the conclusion of the testimony the trial court directed a verdict in favor of defendant Woodfin and submitted the case to the jury against Gazzola. The jury found in favor of the plaintiff in the sum of $200, actual damages, and $1,800, punitive damages, upon which a judgment was entered. To reverse that judgment, this appeal is prosecuted.

Appellee has moved to dismiss the appeal on the ground that appellant has failed to comply with the provisions of § 1314, Crawford & Moses' Digest. The applicable part of the section provides that "where the verdict or decision is rendered within three days of the expiration or adjournment of the term a motion for a new trial with alternative prayer for appeal in case said motion be overruled may be presented upon reasonable notice to the opposing party or his attorney of record to the judge or chancellor or his successor of the district in which said verdict or decision was rendered at any time within 30 days from the date of the verdict or decision, and such judge or chancellor shall pass upon said motion and indorse his ruling thereon upon the back of the motion either granting the motion or overruling the same; and if said motion be overruled he shall also indorse upon said motion his order granting appeal to the Supreme Court and his further order specifying a reasonable time allowed in said cause for filing a bill of exceptions," etc.

The verdict was rendered on March 19, 1934, the last day of the term. Motion for a new trial was filed in the office of the clerk of the court on April 16, 1935, without any indorsement of the judge relating to its presentation or his action thereon. On the 29th day of April, appellant's attorney withdrew with the permission of the clerk the motion and returned it to the clerk for filing on that day. When returned it bore this indorsement:

"Lonoke, Arkansas, 4/29/35.

"This motion for a new trial in the case of New v. Gazzola was presented to the court at Clarendon, Arkansas, April 15, 1935, and taken under advisement. On this day, said motion is overruled. The defendant ex-

cepts to the ruling of the court. Defendant prays an appeal to the Supreme Court, which is granted and 60 days given to file bill of exceptions.

"W. J. Waggoner, Circuit Judge."

"Upon return of the motion, the clerk indorsed the following filing:

"The above order of the circuit judge was filed on the 30th day of April, 1935.

"Leo H. Rogers, Clerk."

From this indorsement it appears that the motion was presented to the judge within the 30-day period provided by statute, and we must presume that for a sufficient reason it was taken under advisement until the 29th day of April, when the motion was overruled and the proper indorsements of the judge's action with the required orders indorsed thereon. The action of the court thus appears to have been beyond the 30-day period.

The specific contentions made for dismissal of the appeal are that no notice was given to the opposite party or his attorney. The provision for notice should not be disregarded, for in some cases it might be a fatal omission; the reason for the notice is, that the opposing party may have an opportunity to hear and resist the allowance thereon. Where, as in this case, the court ruled in favor of the opposing party by denying the motion, he is not prejudiced by the failure of appellant to give the notice.

It is next contended that the notice was not in proper form when it was filed on April 16, in that it did not have the rulings of the judge indorsed thereon. Under the rule of practice laid down by the statute, the motion must first be presented to the judge and after the latter has indorsed his action with respect to granting or overruling the same, his grant of appeal and extension of time for filing bill of exceptions, the motion is then to be filed with the clerk. Therefore the filing on April 16, without the judge's indorsement was premature.

The further contention is made that the court could not extend the time for filing the motion by taking the same under advisement, and that, after the expiration of the 30 days, the judge had no authority to rule upon the

motion, grant the appeal or fix the time for filing the bill of exceptions. In support of this contention we are cited the case *Spivey* v. *Spivey*, 149 Ark. 102, 231 S. W. 559. There is an expression in that opinion which seems to sustain the position taken by appellant, which is as follows:

"The statute requires the motion for a new trial to be presented to the court for its action and be acted upon by the court within 30 days from the date of the verdict or decision." An examination of that case discloses, however, that the time in which "the court acted" was not an issue in the case, and that the words "be acted upon by the court" was not necessary for the decision of the question presented. The judgment under consideration was rendered on August 25, and within three days before the adjournment of court. On the date on which the court adjourned which was the 26th day of August, a motion for a new trial was filed in the office of the clerk of the court, but was not presented to the judge until after the expiration of the 30-day period provided. The judge overruled the motion, but did not indorse on it an order granting an appeal and naming the time in which bill of exceptions might be filed. Therefore two express requirements of the statute were not obeyed, and the motion was not sufficient to bring the bill of exceptions into the record for review. It therefore appears that the expression "and be acted on by the court" was dictum and must be regarded as "a slip of the pen," for the statute does not provide for any certain time in which the motion shall be filed in the office of the clerk, or when it shall be acted upon by the judge. Therefore the language of the court last above quoted is not justified by any provision of the statute. Cases may well be supposed where it would not be practicable for the judge to pass upon the motion within 30 days, and as noted the statute does not so provide. Under circumstances which might justify it, the motion, might be presented on the last day allowed, and the errors assigned might be such as would require the taking of testimony in order that the judge be properly advised before filing thereon. This appears

a sufficient reason for the silence of the statute as to when the motion must be acted upon by the court.

The premature filing of the motion, while erroneous, was not fatal to the appeal for the reason that all that is required is that it be filed when the judge has indorsed his action thereon.

We conclude therefore that the proceedings on the motion were in substantial compliance with the statute, and the motion to dismiss is denied.

Appellant contends that the complaint shows on its face the cause of action barred by the statute of limitations, and that its defense of set-off was exclusively cognizable in a court of equity, and the trial court erred in its refusal to transfer the cause and proceedings to trial of the issues over his objection. We think these contentions are without merit, but find it unnecessary to discuss same for reasons which hereinafter appear.

The serious contention presented is that the appellee in the court below failed to establish the fact that the prosecution was malicious and without probable cause. In an action for malicious prosecution the finding of an indictment by the grand jury is *prima facie* evidence of probable cause, and, while not conclusive of that fact, the burden is upon the plaintiff to prove both want of probable cause and malice. *Wells* v. *Parker,* 76 Ark. 41, 88 S. W. 602; *Casey* v. *Dorr,* 94 Ark. 433, 127 S. W. 708.

It is essential in an action for malicious prosecution that the plaintiff show not only want of probable cause but also malice on the part of the defendant. These two elements must concur in order to constitute malicious prosecution. *Price* v. *Morris,* 122 Ark. 382, 183 S. W. 180; *Foster* v. *Pitts,* 63 Ark. 387, 38 S. W. 1114; *McIntosh* v. *Bullard,* 95 Ark. 227, 129 S. W. 85.

The testimony relied on to establish these essential elements is that of J. J. New and his brother, Walter New, and Clyde Erby. The evidence given before the grand jury resulting in the procurement of the indictment was that of Mr. Woodfin who stated:

"J. J. New lived on Mr. Gazzola's place and gave him a mortgage on a number of mules, and it turned out

in the fall, when he went to close out the mortgage, a brother of J. J. New claimed that two of the mules didn't belong to him, and that they were his, and he wouldn't give the mules up, and Mr. Gazzola wants to indict him for giving a mortgage on mules that didn't belong to him. He did not send the sheriff to take possession of the mules, but he claimed the mules belonged to J. J. New. J. J. New's brother's name is Walter New, and in the fall of the year Walter claimed that he never knew his brother had given a mortgage on the mules. J. J. New had given the old man four mules and then Walter claimed these other two. J. J. New claimed they were his brother's mules, and he didn't tell his brother about it until that fall. The debt between them has been settled except these mules."

This was all the testimony considered by the jury. Mr. Gazzola had appeared in the jury room, but he spoke such broken English that he could not make himself understood.

Subsequent to the return of the indictment, New was tried and acquitted and afterward brought this action. At the trial he testified regarding a settlement he had had with Mr. Gazzola by which he was to move from Gazzola's farm and be given four mules and turn over to Gazzola all of the property mentioned in two chattel mortgages, which he had given him during the year 1929. The first of these mortgages was executed on the 21st day of March, 1929, and another on June 26, following. Witness testified that at the time this agreement was made Mr. Woodfin listed the chattels described in the two mortgages; (the two mules in controversy were two of those named in the mortgage of June 26, 1929); that he never made any such statement as that attributed to him by Woodfin in his testimony before the grand jury; that he had never told Mr. Gazzola or Woodfin that he had sold the two mules to his brother, and had never spoken to Mr. Gazzola since the day of the settlement. Witness stated that in May, 1930, he had a conversation with Mr. Woodfin, but did not tell him that he had sold the mules to his brother. As to moving off Gazzola's farm, witness was asked: "What did you do with the balance of

the stuff—you left it on the place?'' and he answered: ''Yes, sir.''

Walter New testified that he was present when Gazzola and his brother, J. J. New, had their settlement, and that he heard the terms, that he had had the two mules in controversy in his possession since the spring of 1929 when he had come to Gazzola's farm to make a crop with his brother; that during the latter part of May or the first of June of 1930 Gazzola and Mr. Woodfin made a demand upon him for the mules in his possession, including the two mules in controversy, and that he refused to give up these two mules. In explaining this he said: ''I reasoned with them and felt like I was entitled to some consideration. I told them there was a consideration and a considerable amount that should come to me out of that crop. I thought that I was due some consideration before I turned the mules over to them.'' Previous to this, in answer to the question, ''Do you know anything about the two mules that are involved in this matter between Mr. New and Mr. Gazzola and Mr. Woodfin?'' Witness had stated: ''We were farming and my brother turned two mules over to me to farm with. We made a verbal trade that in the event I paid for the mules that fall I could keep them. I had them in my possession * * * and kept them * * * until they came up there after them and I refused to release them.'' Witness stated that at the time J. J. New made the verbal trade with him that J. J. New informed him that the mules were mortgaged to Gazzola, and, in answer to the question, ''You wouldn't turn those mules over to anyone until you had a settlement with your brother?'' he answered, ''No—not until I got a settlement.'' Witness was asked, ''You explained to them that you had bought the mules from your brother and that's why you were trying to hold them?'' He answered, ''It was understood that we had a conditional trade.'' At no place in his testimony, however, does it appear that he frankly disclosed to Gazzola that J. J. New had told him when they had the verbal trade that the mules were under mortgage to Gazzola.

J. J. New testified that the two mules in controversy, at the time of the settlement with Mr. Gazzola belonged to witness subject to Gazzola's mortgage. Later on he said: "I was going to sell them provided that he (Walter) paid out subject to the mortgage Mr. Gazzola held." Witness was present when Walter was testifying and admitted that his testimony was truthful as to the sale of the two mules. It does not appear from the evidence given by J. J. New that he disclosed to Gazzola or Woodfin the trade between himself and Walter New and explained to them that transaction.

The witness, Clyde Erby, stated in effect that some time in 1928 or 1929 he went to Mr. Gazzola and told him that he would like to handle his (Gazzola's) place for him, and "he kind'o blew off and said that he didn't know whether he wanted to let it go or not; that Jim (J. J. New) had stolen everything he had over there and I turned around and walked out."

The following facts are undisputed: In 1926 J. J. New rented Gazzola's farm and moved upon it. The result of his operations on the farm was that in July, 1928, he was indebted to Gazzola in the sum of $6,955.44 and during the year 1929 Gazzola furnished him $9,622.87 in addition. During that year New was farming some land belonging to a Mr. Erwin, and, upon certain representations made by New, Gazzola advanced a considerable sum for the operation of that farm. Later he discovered that these representations were false, and, as he was already dissatisfied with New as a tenant, he decided that that year would terminate their relation as landlord and tenant. At the close of that season's business the account of New with Gazzola, after giving him all credit, left a balance due Gazzola of $8,588.88, exclusive of interest and also of a $2,000 item New owed Gazzola for rent, making an aggregate of more than $10,000 due Gazzola by New. Gazzola inquired of New in the latter part of 1929 if he had found a place to move, and New claimed that under his contract he was entitled to remain on the farm through the year 1930 and indicated that he was going to stay on. He finally made the proposition to Gazzola that if the latter would discharge him of indebted-

ness and give him four mules he would move off the place and surrender to Gazzola all the chattels included in the two mortgages made in the year 1929. After consulting his friends, Gazzola finally agreed to New's demands and settled on New's terms giving him the four mules, and at that time a Mr. Woodfin, who was Gazzola's agent, made a list of the properties, and later on in endeavoring to gain possession of them, Gazzola found that Walter New had possession of two of the mules which were included in the mortgage of June 26, 1929. Gazzola demanded these mules of Walter New who refused to surrender them, claiming that he was entitled to retain them under some kind of a trade made with his brother, J. J. New, and Gazzola never did get these two mules.

Both J. J. New and Walter New claimed that Walter got possession of these mules in the spring of 1929 under the verbal agreement as testified to by Walter New. If this is true, J. J. New was not the owner of the mules at the time he mortgaged them to Gazzola on June 26, following.

A probable cause is that state of case where, after ordinary care in ascertaining the facts, one has reasonable grounds for believing that the statements made by him with relation thereto are true, or, as defined by this court in *Kansas & Texas Coal Co.* v. *Galloway*, 71 Ark. 351, 74 S. W. 521, "Probable cause is such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty." Applying this rule to the admissions made by the News and the undisputed facts which have been narrated, we conclude that the testimony fails to show want of probable cause within the meaning of the definition given. One who sues for malicious prosecution must establish not only that he was innocent of the charge but also that there was no probable cause for such prosecution, and where the facts relied upon to constitute such cause are undisputed, the question is one of law for the court to determine and should not be submitted to the jury. *St. L. I. M. & So. Ry. Co.* v. *Tyus*, 96 Ark. 325, 131

S. W. 682; *Whipple* v. *Gorsuch,* 82 Ark. 252, 101 S. W. 735.

An application of these principles to the facts of this record forces the conclusion that all reasonable minds must agree that Gazzola had cause for entertaining an honest and strong suspicion that appellee was guilty of the crime charged. The facts of this case are no stronger for the appellee than those in the case of *Keeby* v. *Stifft,* 145 Ark. 8, 224 S. W. 396, where this court, on appeal, upheld the action of the trial court in directing a verdict for the defendant.

Judgment is reversed, and as the facts appear to have been fully developed the case is dismissed.