Glen BAKER, Plaintiff,

v.

OKLAHOMA TIRE & SUPPLY COMPANY and McCrory Corporation, Defendants.

No. ED 70-C-39.

United States District Court,
W. D. Arkansas,
El Dorado Division.

July 10, 1972.

William I. Prewett, Brown, Compton & Prewett, El Dorado, Ark., for plaintiff.

John M. Shackleford, Jr., Shackleford & Shackleford, El Dorado, Ark., for defendants.

## MEMORANDUM OPINION

OREN HARRIS, Chief Judge.

The plaintiff, Glen Baker, brings this diversity action against the Oklahoma Tire & Supply Company and McCrory Corporation alleging damages as a result of malicious prosecution, abuse of legal process and libel and slander against him in connection with a check signed by Plaintiff Baker and made payable to Oklahoma Tire & Supply Company which was unaccepted by the bank due to insufficiency of funds of the plaintiff in the bank.

The plaintiff is a resident of the State of Louisiana and the defendant, Oklahoma Tire & Supply Company is a division of McCrory Corporation, a Delaware corporation, authorized to do business in the State of Arkansas. The sum involved in the proceeding exceeds $10,000, exclusive of interest and costs. Jurisdiction is established pursuant to 28 U.S.C.A. § 1332.

For a better understanding of the issues involved a brief summary of the facts should be made for the record.

McCrory Corporation organized and existing under the laws of the State of Delaware is the operating entity for retail stores described as Oklahoma Tire & Supply Company. The principal place of business is other than Arkansas or Louisiana. The defendant operates a retail store in Crossett, Ashley County, Arkansas.

In November, 1969, the plaintiff made application for employment with the defendant at its Crossett store and commenced to work for the defendant on November 19, 1969. He was a salesman with a salary and commission. His employment continued until February 16, 1970. Oklahoma Tire & Supply Company maintained a policy of permitting employees to draw in advance on their pay for services between pay periods up to $20 and to be drawn from "Petty Cash". (P.C.)

On February 3, 1970, the plaintiff availed himself of the company policy and obtained an advance of $20. In addition he had an open account with the company in the sum of $110.17.

The plaintiff had a payroll check due February 16, 1970. He claims that he previously advised the manager of the store of his intention to resign for the purpose of entering a trade school. Whether he advised the defendant's manager of his intention is a question on which the testimony is in conflict. The manager of the store, A. L. Denson, contends that he was not aware of the plaintiff's intention to resign for the stated purpose.

On February 16, 1970, the plaintiff arrived at the defendant's store in Crossett, Arkansas, to pick up his check which had not arrived. He had coming the sum of $160.44. He explained to the store manager of his need for $153. He asked for an advance of this amount, but was advised it was against company policy. He explained to the store manager he had to borrow the amount needed and during the course of the conver-

sation it was suggested that he give a check for the amount to the store and receive the money he needed primarily in connection with a traffic violation in Louisiana. The store manager made it quite clear that the check would not be deposited in the bank until the following day. It was obviously inferred that the plaintiff's check due would arrive and could be used to take care of the check plaintiff signed payable to the store in the sum of $153.

The check on its face shows the date of February 16, 1970, on the First National Bank of Crossett, Arkansas, payable to the order of OTASCO No. 79 (Oklahoma Tire & Supply Company No. 79). The check was signed by Glen Baker. It is quite clear that someone other than Baker made out the check, including the figure of $153. Baker testified it was filled out by the store manager, Denson. Denson could not recall that he filled out the check for Baker's signature. The check was deposited in the regular way late afternoon, but returned with notation "not sufficient funds".

After Baker obtained the $153 he left ostensively to take care of the problem in Louisiana. The store manager expected him to return. However, Baker had been accepted in a trade school in Houston, Texas, and did not return for the purpose of continuing his employment. A few days following the plaintiff returned to Crossett with his father for the purpose of trying to make arrangements to take care of his account and obligation with the defendant store. His father offered to sign a note, but this arrangement was unsatisfactory. In the meantime, the payroll check of the plaintiff arrived but was retained by the store manager pending the settlement for the check and store account of the plaintiff.

The plaintiff proceeded to his training school in Houston. Subsequently, the store manager attempted to contact the plaintiff at his father's home in Louisi-

ana without success. Since the matter was not settled, the store manager presented it to his supervisor and was advised to present the matter of the check to the Prosecuting Attorney. On April 1, 1970, Honorable Ovid T. Switzer, Deputy Prosecuting Attorney filed an information against plaintiff, Glen Baker, charging him with a criminal offense of violation of the Hot Check Law. A warrant was issued pursuant to the felony information which was sent to the Sheriff of the Parish in Louisiana where the plaintiff's father lived. As the plaintiff could not be located by the Sheriff in Louisiana the warrant was returned "Non Est".

Subsequently, a second information was filed by the Deputy Prosecuting Attorney dated June 26, 1970. In the meantime, the plaintiff's father undertook as representative of the plaintiff to get the matter settled. An attorney in Louisiana was employed. The plaintiff was advised to return and surrender himself to the Sheriff of the Parish in Louisiana. The plaintiff's father made personal trips to Arkansas and discussed the matter with the officials. The employed attorney contacted the Prosecuting Attorney for the purpose of a settlement.

The defendant company had the plaintiff's payroll check reissued payable to the Crossett store. The sum of $160.44 was credited to the total amount owed by the plaintiff to the store. This amounted to $283.17. By applying the $160.44 check there left remaining the sum of $122.73 the plaintiff owed to the company. The Louisiana attorney of the plaintiff eventually settled the matter with the Deputy Prosecuting Attorney for the payment of costs which amounted to $28 and $112 in settlement of the OTASCO account. With this settlement which was brought to the attention of the circuit judge, the criminal charge against the plaintiff was dismissed.

With this brief summary, the Court proceeds from the record of the case,

testimony of witnesses, exhibits and briefs of counsel to its findings and conclusions pursuant to Rule 52 of the Federal Rules of Civil Procedure.

It is clearly established that the check in question was made out by someone other than the Plaintiff Baker. The Court concludes that the store manager made out the check to the store in the sum of $153 which the plaintiff signed and on which he received the amount of the check in cash from the store. The Court concludes from the record that this amount was advanced by the store manager from the store funds and, consequently, was in the nature of a loan. It is further established that the check was not to be presented to the bank until the following day.

The Court further concludes that the check issued to the store under the circumstances presented on which the plaintiff obtained $153 was to be covered by the payroll check due the plaintiff at that time in the sum of $160.44 but had not arrived. The payroll check did arrive within three days and was held by the store manager and eventually reissued to the store and applied to the plaintiff's account.

In addition to this established record, the first information filed by the Deputy Prosecuting Attorney contained the statement that there remains a balance due on the check in the sum of $118.15. It is noted this language was not included with the issuance of the second felony information June 26, 1970.

From the testimony of the store manager, A. L. Denson, it is clearly established that his purpose and the purpose of the supervisor representing the store was to collect the account owed by the plaintiff to the store. Although the testimony of Denson was generally so indefinite and irrational to obtain the full import of his account of the incident, he did make it clear by stating on several occasions that his purpose was to collect the account owed by the plaintiff.

Through Plaintiff's Exhibit No. 8 the Honorable Ovid T. Switzer, as Deputy Prosecuting Attorney, advised the plaintiff's Louisiana attorney, Mr. Warren Hunt, dated August 23, 1970, that the information had been withdrawn and the warrant was dismissed upon the recommendation of the Prosecuting Attorney's office. Further, Mr. Switzer advised Mr. Hunt that from the information received by his office after the criminal charges were filed, he believed it should have been a civil matter instead of a criminal charge. The Court further concludes from the record that the defendant's store manager failed to give the Deputy Prosecuting Attorney the information which led to the issuing of the check on which the criminal charges were filed and to explain that his purpose and intent was to collect the account in full owed by the plaintiff.

From the record and the evidence produced in the case, the Court concludes that the plaintiff has failed to establish that he was injured and, therefore, damaged as a result of libel and slander. Although there was some publicity, the plaintiff had no difficulty in obtaining employment after completing the trade school work in Houston, Texas.

The Court further concludes the Arkansas law applies in this case and holds that from the evidence the allegation of malicious prosecution is not established. Although the testimony is somewhat in conflict, it is quite apparent that the entire matter was terminated by action of the plaintiff through his father and Attorney Hunt in bringing about a settlement of the account with OTASCO and payment of costs to get the matter dismissed by the Circuit Court of Ashley County, Arkansas. The record fails to establish that the criminal charges were terminated to the favor and advantage of the plaintiff. Neither probable cause nor malice in instituting the proceeding has been established. 52 Am.Jur.2d, Malicious Prosecution, § 6; Kable v. Carey, 135 Ark. 137, 142, 204

S.W. 748; Gazzola v. New, 191 Ark. 724, 87 S.W.2d 68, 71.

■ The Court further concludes that from the record and the testimony produced in the case that the elements essential to sustain an action for abuse of process have been shown. The court has no difficulty in reaching a conclusion that the defendant through its representative undertook an illegal, improper and perverted used of the process, a use neither warranted nor authorized by process and that the defendants' ulterior motive or purpose was for the collection of the account owed by the plaintiff.

■ It is well established Arkansas law that if the defendant, through its representative employed process, legally and properly issued, wrongfully and unlawfully for a purpose which by law it was not intended to effect, he was guilty of a malicious abuse of process, and would be liable in damages for the abuse. Baxley v. Laster, 82 Ark. 236, 242, 101 S.W. 755.

In a more recent case, the Supreme Court of Arkansas, has restated the applicable law in the case of Lewis v. Burdine, 240 Ark. 821, 402 S.W.2d 398. In addition to stating the rule in *Baxley*, supra, it restated the rule in Greer v. Cook, 88 Ark. 93, 113 S.W. 1009, as follows:

"The fact that the creditor instituted the suit in a foreign jurisdiction for the sole purpose of vexation and oppression does not authorize the interposition of a court of equity by injunction. The remedy, if any, is at law for the malicious abuse of process." See Volume 1. Am.Jur.2d, Sec. 6.

In Lewis v. Burdine, supra, 240 Ark. at page 824, 402 S.W.2d at page 399, the Arkansas Supreme Court quoted Prosser, Torts, § 115 (3d ed. 1964) as follows:

"Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish. . . . The essential elements of abuse of process . . . have been stated to be: First, an ulterior purpose, and second, a willful act in the use of the process not proper in the regular conduct of the proceeding."

■ In an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor, or that the process was obtained without probable cause. It is also well settled that, except on the issue of punitive damages, it does not mean spite or ill will, or anything other than improper purpose itself for which the process is used. Prosser, Torts, supra; Lewis v. Burdine, supra.

■ The Court concludes that the plaintiff is entitled to damages sustained as a result of abuse of process by the defendants. The testimony established that the plaintiff was required to spend considerable time and cost and in addition was subjected to embarassment, humiliation and record which reflect on his reputation. From the record the Court concludes that the plaintiff has been injured to the extent that would entitle him to damages in the sum of $3500.

The plaintiff also requests punitive damages. The Court does not think the evidence and record in the case justifies punitive damages and concludes the plaintiff is not entitled to special damages commonly referred to as punitive.