JOSEPH E. STRICKER ET AL., PLAINTIFFS IN ERROR, v. PENNSYLVANIA RAILROAD COMPANY, DEFENDANT IN ERROR.

The plaintiffs purchased tickets for passage on defendant's railway from New Brunswick to Perth Amboy via Rahway, the connecting point for Perth Amboy by a branch road. It was Sunday evening, and the tickets were bought after the agent had informed plaintiffs that the last train left for Perth Amboy at nine o'clock and thirty-six minutes, that being the last train for the day going in that direction. Upon their entering the train the conductor punched their tickets and informed plaintiffs that the train did not stop at Rahway, but did stop at Metuchen, an intermediate station ; that he thought they could make their train at Elizabeth, which was the next station beyond Rahway, and the extra fare would be sixteen cents. This they refused to pay, and the conductor thereupon informed them that he would put them off if they did not pay. This was before reaching Metuchen. They did not alight at the latter station but pursued their journey to Elizabeth without the payment of the additional fare, although the same was repeatedly demanded, with threats to remove them from the train or arrest them in case of non-compliance. The plaintiffs knew that Rahway was the connecting point for their destination and had traveled that route several times before. When the train arrived at Elizabeth the conductor again demanded the extra fare, and payment being again refused, he ordered the arrest of plaintiffs by police officers, under sections 18 and 19 of "An act respecting railroads and canals." *Gen. Stat.,* p. 2670. The plaintiffs were locked up for the night, and at the hearing the next morning before a magistrate were discharged, and thereupon they sued the defendant company for damages for malicious prosecution. Upon the trial, at the close of the plaintiffs' case, a nonsuit was granted by the trial judge. To this ruling exception was taken and the same was brought up for review by writ of error. *Held*—

1. That as the declaration was in form one for malicious prosecution, and did not contain a count for false imprisonment, the proofs must show that the arrest was made maliciously and without probable cause, and the evidence failing to disclose the latter element of proof, the nonsuit was right.

2. That regarding the action as one for false imprisonment, as it was treated by the trial judge and by counsel on the argument, still the nonsuit must be sustained, because it was the duty of the plaintiffs, under the law, to have either left the train at Metuchen, and then looked to the company for damages for the alleged misdirection, or to have paid the additional fare from Rahway to Elizabeth ; and having

failed to do either, they became liable to arrest by the conductor, under said statute, for the offence of knowingly and willfully proceeding in a carriage of a railroad company beyond the distance to which the fare had been paid, without previously paying the additional fare for the additional distance, and with intent to avoid the payment thereof.

On error to the Supreme Court.

For the plaintiffs in error, *James Parker.*

For the defendant in error, *Alan H. Strong.*

The opinion of the court was delivered by

HENDRICKSON, J.   This writ brings up for review a judgment of nonsuit which was granted at the trial of a Supreme Court issue at the Union Circuit.

This and the case of Richard A. Peltier against the same defendant, arising out of the same transaction, were tried together by agreement of counsel, and were so argued in this court.

The plaintiffs brought suits against the defendant for damages for malicious prosecution, charging that by its conductor and agent on one of its cars, without any reasonable or probable cause of complaint against the plaintiffs, falsely and maliciously charged said plaintiffs with attempting to defraud said defendant by traveling in a carriage of said defendant, from Rahway to Elizabeth, without paying fare and with intent to avoid payment of said fare, in violation of the law of this state, and required certain police officers to arrest the plaintiffs upon such charges, without process, and that said police officers did, in compliance with such requirement, imprison the plaintiffs in the city of Elizabeth and keep and detain them there in prison, without any reasonable and probable cause whatsoever, for a long space of time, &c.   The declaration further alleged that, in truth and in fact, the said defendant, at the time of making such arrests, had not any reasonable or probable cause of complaint against the plaint-

iffs, and that defendant then and there well knew that the plaintiffs had not been guilty of traveling from Rahway to Elizabeth without paying their fare or with intent to avoid paying their fare, and had not violated any provision of the statute of this state in such case made and provided, and that thereby plaintiffs say that by reason of said arrest and imprisonment, maliciously and without probable cause, so by said defendant procured and accomplished, the said plaintiffs were then and there not only hurt, &c., but also greatly exposed and injured in their credit and circumstances; and after setting forth the hearing of the charge before the magistrate the next morning and their acquittal and discharge, they claim damages against the defendant. The defendant filed the plea of the general issue.

Upon the trial the following facts, briefly stated, were proved by the plaintiffs and their witnesses: The plaintiffs, on Sunday, February 3d, 1895, went from Perth Amboy, their place of residence, with a sleighing party to New Brunswick, and in the evening started to return home by rail. With that purpose in view they went to the depot at about nine o'clock in the evening and were informed by the ticket agent that the next train for Perth Amboy left at nine o'clock and thirty-six minutes, and bought tickets for that place, which had printed on them the words "via Rahway." In point of fact the nine thirty-six train was the last train on Sunday evenings, and was scheduled not to stop at Rahway, but did stop at Metuchen, an intermediate station.

The plaintiffs entered a car of the nine thirty-six train, and upon its leaving New Brunswick the conductor approached them and upon receiving their tickets punched and marked them and returned them to the plaintiffs. The conductor thereupon informed plaintiffs that the train did not stop at Rahway but did stop at Metuchen, and that the next stop after that was Elizabeth, a station beyond Rahway, and that if plaintiffs wanted to go to Perth Amboy they could get their train at Elizabeth and the difference in the fare would be sixteen cents, adding ten cents thereto for the excess ticket, which

was redeemable for the latter amount. One of the plaintiffs answered, "I refuse to pay it," and the conductor said, "I am going to put you off somewhere." This was before reaching Metuchen. The plaintiffs did not leave the train there but proceeded with it, the conductor returning three or four times before reaching Elizabeth and vainly demanding of the plaintiffs the additional fare, under threats of putting them off the train or arresting them at Elizabeth if they did not pay: The regular route from New Brunswick to Perth Amboy was by changing cars at Rahway and proceeding thence by a train from New York, which came from the opposite direction, and this the plaintiffs knew. Upon the arrival of the train at Elizabeth the conductor again demanded of the plaintiffs the extra fare, under threat of arrest, which they refused to pay, and thereupon the arrest was made by the police officers, by order of the conductor, about ten o'clock in the evening, and the next morning, about nine A. M., after complaint and hearing before the magistrate, the plaintiffs were discharged as stated in the declaration.

The authority of law under which the conductor assumed to act will be found in *Gen. Stat., p.* 2671, §§ 18, 19, which provide as follows:

"Sec. 18. That if any person travel or attempt to travel in any carriage of any railroad company, or of any other railroad company or party using any railway, without having previously paid his fare, and with intent to avoid payment thereof, or if any person, having paid his fare for a certain distance, knowingly and willfully proceed in any such carriage beyond such distance, without previously paying the additional fare for the additional distance, and with intent to avoid payment thereof, or if any person knowingly and willfully refuse or neglect, on arriving at the point to which he has paid his fare, to quit such carriage, every such person shall for every such offence forfeit to the company running the train whereof such carriage shall be part, a sum not exceeding five dollars, which fine shall be imposed with costs by any justice of the peace before whom such person shall be

brought on complaint made on oath or affirmation, and after summary hearing of the acts and circumstances, or on admission of the party.

"Sec. 19. That if any person be discovered in committing or attempting to commit any such offence as in the preceding enactment mentioned, all officers and servants, railway police and other persons on behalf of the company, or such other company or party as aforesaid, and all constables and peace officers, may lawfully apprehend and detain such person until he can conveniently be taken before some justice of the peace or until he be otherwise discharged by due course of law."

At the close of the plaintiffs' evidence the counsel of the defendant moved for a nonsuit on the ground that the plaintiffs must prove that they were arrested and prosecuted without any probable cause and maliciously.

The learned judge who presided did not treat the action as a suit for malicious prosecution, but as one for false imprisonment, and proceeded to dispose of the motion from that aspect of the case, and held that, under the facts proven and the statute above recited, the conductor was justified in arresting the plaintiffs, and granted a nonsuit.

It seems to me, however, that the plaintiffs, having not only set out in the declaration an unlawful arrest and imprisonment, but having added thereto the averments that the arrest was made maliciously and without probable cause, their action became, in fact, one for malicious prosecution, and there being no separate count for false imprisonment, they were required, in order to sustain the action, to prove the truth of these allegations.

This principle is laid down by this court in *Case* v. *Central Railroad Co.*, 30 *Vroom* 471. The syllabus reads : " If the plaintiff fails to prove the cause of action alleged in his declaration, but proves a different cause of action, a nonsuit is not erroneous in the absence of a motion to change the *narr.*"

It clearly appears, I think, that the plaintiffs failed to show that the conductor of defendant's train, in making the arrest

complained of, acted without any reasonable or probable cause as alleged in the declaration. The facts alleged are such as would certainly warrant a reasonable man in the belief that the plaintiffs were guilty of the offence charged in the statute, and such a belief in the actor, thus engendered, is what I understand to be probable cause for the action complained of.

When the facts are undisputed, the question of probable cause is one for the court. 2 *Greenl. Ev.* 454 ; *Bell* v. *Atlantic City Railroad Co.*, 29 *Vroom* 227 ; 2 *Thomp. Trials* 1613.

And my conclusion is that, the plaintiffs' proof having failed in this particular, the nonsuit was justified for that. reason and must therefore stand.          •

But, viewing the case as a prosecution for false imprisonment, as it was treated by the trial court and by the counsel on both sides in the argument here, I fail to see that the trial judge erred in this ruling.

The act before referred to requires proof that the passenger, having paid his fare for a certain distance, did knowingly and willfully proceed in such carriage beyond such distance without previously paying the additional fare for the additional distance, and with intent to avoid payment thereof.

The legality of this ruling is challenged on the ground, as alleged, that the statute under which the plaintiffs were arrested is a penal one, and as such must be strictly construed, and that the case is not within the letter of the statute, for the reason that the intent to avoid the payment of the fare is either not shown or became a question for the jury.

It must be admitted that this is a penal statute, and that, in general, such statutes must be construed strictly, but it is equally well settled that this rule is not violated by adopting the sense of the words which best harmonizes with the object and intent of the legislature, and that the whole context of the statute must be construed together. 2 *Ell. R. R.* 710.

This was the ruling of Chief Justice Marshall, in *United States* v. *Wiltberger*, 5 *Wheat.* 76, and of Judge Swain, in *United States* v. *Hartwell*, 6 *Wall.* 385, the former saying :

" The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words there is no room for construction."

The question, then, is, Do the circumstances of the present case render the plaintiffs amenable to this statute when construed according to the rules thus laid down ?

In the application of the facts, it may be well to first state the rules of law by which passengers must be governed in traveling upon railroads, where they have taken a wrong train, as in this case, through alleged misdirection of a ticket .agent of the company. The Messrs. Elliott, in their valuable treatise on railroads, have formulated from the decisions the correct rule of law in that particular in this wise :- " The conductor cannot decide from the statement of the passenger what his verbal contract with the ticket agent was in the absence of the counter evidence of the agent. * * * The law settled by the great weight of authority * * * is that the face of the ticket is conclusive evidence to the conductor of the terms of the contract of carriage between the passenger and the company. The reason for this is found in the impossibility of operating railways on any other principle, with a due regard to the convenience and safety of the rest of the traveling public or the proper security of the company in collecting fares. The conductor cannot decide from the statement of the passenger what his verbal contract with the ticket agent was, in the absence of the counter evidence of the agent. The passenger must submit to the inconvenience of either paying his fare or ejection, and rely upon his remedy in damages against the company for the negligent mistake of the ticket agent." 4 *Ell. R. R.* 1594.

Now, the only explanation or excuse given by the plaintiffs for refusing to pay their fare from Rahway to Elizabeth, between which points they traveled, admittedly, without any ticket, is because they say that, before entering the car, they asked the ticket agent at New Brunswick at what time the next train left for Perth Amboy, and the agent replied, at

nine o'clock and thirty-six minutes, and that, upon receiving this information, they bought their tickets.

The occasion spoken of being Sunday, when the laws of the state permit fewer trains to be run than on week days, it became more particularly the duty of the plaintiffs to consult the schedules of the company, both as to the times and stopping-places of the trains. That the plaintiffs had been careless as to this seems to appear from some statements of Mr. Stricker on cross-examination. He admitted he had fallen asleep in the waiting-room, and that the baggage master awakened him and asked him where he (plaintiff) wanted to go, and he (plaintiff) replied "Metuchen," and that he had intended leaving on the previous train; that the baggage master then told him the train had gone, and when asked by plaintiff the time the next train left told him at nine o'clock and thirty-six minutes.

This rendition of the matter might throw some doubt upon the allegation of the plaintiffs that their taking the last train that night was entirely due to a misdirection of the ticket agent, but we must assume for the purposes of this case that their statements in this particular are correct.

It seems to be clear from what has been stated that the conductor was acting within the line of his duty when, after punching and marking plaintiffs' tickets, he gave to plaintiffs the information hereinbefore related. That they had no legal right whatever to defy the rules and regulations of the company with regard to their mode of travel and the payment of their fare upon that train, because of what may have happened between them and the ticket agent at New Brunswick, is equally well established. And yet after receiving the information they did from the conductor, before reaching Metuchen, they remained in the train, and the inference from this act as well as from their other acts and conversations, both before and after leaving Metuchen, seems conclusive that they had, before leaving the latter station, determined they would proceed in that train beyond the distance called for by their

tickets, without previously paying the additional fare for the additional distance, and with intent to avoid such payment.

This apparent determination of the plaintiffs, as the sequel showed, they carried out to the letter. That they did so knowingly and willfully, in the sense implied by the statute, is a conclusion fully warranted from the circumstances. It is true that it was developed in the cross-examination of Mr. Stricker that the latter, in one of the altercations the plaintiffs had with the conductor when demanding their fare, said to the conductor that he (Stricker) wanted transportation from New Brunswick to Perth Amboy ; that he did not care if he (the conductor) carried plaintiff to Brooklyn via the Annex and brought him back again ; that was his (the conductor's) business, but he (Stricker) would not pay the extra fare.

But the insistment, if so made, had no basis of support, either in law or reason, and cannot be viewed as other than a mere pretext for resisting a well-known regulation of the company as to the payment of fare by passengers.

My conclusion is that the conductor was justified in making the arrest of the plaintiffs at Elizabeth, and that the action for false imprisonment could not be sustained. The construction here given to the act in question finds support in the opinion of the Supreme Court, delivered by Mr. Justice Van Syckel, in *Harris* v. *Central Railroad Co.,* 29 *Vroom* 282.

I will vote to affirm the judgment below.

Judgment affirmed by a divided court.

*For affirmance*—DEPUE, LIPPINCOTT, LUDLOW, HENDRICKSON, NIXON.   5.

*For reversal*—THE CHIEF JUSTICE, COLLINS, DIXON, GARRISON, BOGERT.   5.