Wayne E. GLENN, George L. Woods,
James Slankard and Tom Harris,
Plaintiffs,

v.

HOERNER BOXES, INC., Defendant.

Civ. A. No. 1670.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Nov. 19, 1962.

Sexton & Morgan, Ft. Smith, Ark., for plaintiffs.

Bethell & Pearce, Ft. Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

On September 24, 1962, the defendant, Hoerner Boxes, Inc., filed its motion to dismiss the complaint of plaintiffs on the ground that the complaint fails to state a claim upon which relief can be granted. It was specifically alleged in the motion:

(1) That the original complaint of the defendant herein filed by it as plaintiff in the Sebastian Chancery Court, Fort Smith District, on March 7, 1962, was against the defendants therein, plaintiffs in the instant action, only for the purpose of securing an injunction against the International Brotherhood of Pulp, Sulphite & Paper Mill Workers, which union the defendants in said action represented; that the suit was a class action brought against the individuals as representatives of the members of the union in the manner provided by Arkansas law;

(2) That in the "Application for Contempt Citation" filed in the said Chancery Court, the individuals named as defendants therein (plaintiffs in the instant action) were named for the reason that they were the defendants in the complaint referred to in (1) above and in the decree entered by the Chancery Court on March 8, 1962, and because of their being representatives of the union and for no other reason, and that such procedure was based on the Arkansas law pertaining to class actions; and

(3) That the plaintiffs in the instant action, being representatives of a class and having been proceeded against in such capacity, have no individual claim or cause of action against the defendant.

On October 4, 1962, the defendant filed an amendment to its motion of September 24, 1962, in which it reaffirmed the allegations contained in the original motion, and further alleged:

(1) That the decree of the Chancery Court issued on the original complaint granted injunctive relief against the defendants therein (plaintiffs here) individually and as representatives of the International Brotherhood of Pulp, Sulphite & Paper Mill Workers Union;

(2) That in response to the "Application for Contempt Citation," the Chancery Court held nine individual members of the class against which the proceedings were instituted to be in contempt of court; that the action taken by the Chancery Court is a bar to the instant suit; and

(3) That the defendant based its action in the Chancery Court entirely on the advice of counsel, which advice was rendered to the defendant after a full disclosure by defendant of all facts available to it in connection with the situation that then existed at its factory in Fort Smith, Arkansas.

On October 27, 1962, the plaintiffs responded to the motion and amendment thereto of the defendant and attached thereto certain exhibits, which will be discussed hereinafter. In addition to attaching the exhibits, the plaintiffs in their response alleged:

"The affidavits and counter-affidavits show the existence of a question of fact, and the motion for summary judgment should be denied."

The complaint of the plaintiffs was filed on September 12, 1962, in which they alleged that on April 12, 1962, the defendant, acting through its representatives, filed in the Sebastian Chancery Court, Fort Smith District, in case numbered 1121, a pleading entitled "Application for Contempt Citation" against all four of the plaintiffs; that the plaintiffs had flagrantly and repeatedly violated an order or decree entered by the Chancery Court on March 8, 1962; that the plaintiffs and each of them should be punished for contempt of the orders and the decree of said Chancery Court, and in addition

be directed to pay certain damages which the defendant alleged to have been caused by the plaintiffs to the property of the defendant and certain employees of the defendant; that the allegations of defendant contained in the "Application for Contempt Citation" were in fact untrue; that following a trial in the Chancery Court of the issues raised by the "Application for Contempt Citation," the Chancery Court on September 11, 1962, entered its order in which it found and decreed that the plaintiffs herein were not guilty of contempt and that they were discharged and acquitted.

The plaintiffs further alleged that the defendant herein instituted the suit or proceedings (that is, filed the "Application for Contempt Citation") maliciously without any probable cause therefor, and that after the institution of said proceeding, the defendant, "well knowing that no probable cause existed for the same, maliciously continued to prosecute the same" against the plaintiffs herein.

Following such allegations, the plaintiffs alleged that they had been damaged by reason of such action and prayed for the recovery from defendant of $200,000 each for such damage.

On September 25, 1962, the day after the motion had been filed, the court sent a letter to the attorneys for the defendant and to the attorneys for the plaintiffs, in which it was stated:

"A casual reading of the motion indicates that it is based upon matters outside the allegations of the complaint, and therefore can best be treated as one for summary judgment and disposed of as provided in Rule 56, Fed.R.Civ.P. Therefore, I suggest that all parties present any and all pertinent material as provided by Rule 56."

The motion and amendment of defendant to dismiss, in effect, allege that the complaint of plaintiffs fails to state a claim upon which relief can be granted. Rule 12(b), Fed.R.Civ.P., provides:

"* * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Rule 56(c) provides that when a motion for summary judgment is filed and the opposing party has responded thereto that:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Thus, the first question which the court must determine is whether there is any genuine issue as to any material fact within the meaning of Rule 56, and, if not, then whether the defendant is entitled to a judgment as a matter of law.

■ In Marion County Co-Op Ass'n v. Carnation Co. (W.D.Ark.1953) 114 F.Supp. 58, this court quoted extensively from a number of decisions of the Court of Appeals for the Eighth Circuit relative to various phases of the summary judgment rule. The court will not repeat those quotations here. Suffice it to say that the burden of establishing the nonexistence of any genuine issue of material fact is upon the moving party, and all doubts must be resolved against such party. In affirming the decision above referred to, the Court of Appeals for the Eighth Circuit in 214 F.2d 557 at page 560 said:

"* * * Our latest expression of the rule was in the case of Durasteel v. Great Lakes Steel Corp., 8 Cir., 1953, 205 F.2d 438, 441, where it was said, 'The motion for summary judgment is not a trial of the issues but

for the purpose of determining whether in fact there are any genuine issues as to material facts.' In Ford v. Luria Steel & Trading Corp., 8 Cir., 1951, 192 F.2d 880, 882, it was stated, 'It has become settled law that a genuine issue as to a material fact cannot be tried and determined upon affidavits, and that it must be conclusively shown that there is no such issue in the case and that the moving party is entitled to judgment as a matter of law, before a summary judgment can lawfully be entered.' We have also held that, 'The question of the sufficiency of the evidence raises an issue of law and if, under the facts, the court would be required to direct a verdict for the moving party, then a summary judgment should be granted.' Hurd v. Sheffield Steel Corp., 8 Cir., 1950, 181 F.2d 269, 271. For other statements on the summary judgment rule, see Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 1951, 191 F.2d 881; Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 1951, 189 F.2d 213; Sprague v. Vogt, 8 Cir., 1945, 150 F.2d 795; Walling v. Fairmont Creamery Co., 8 Cir., 1943, 139 F.2d 318."

With the above rules in mind, the court proceeds to examine and consider the record before it.

On October 30, 1962, the court, by order, set the motion and amendment thereto and the response of plaintiffs for oral argument on November 5, 1962, at 9:00 a. m. On that date the plaintiffs appeared by their attorneys and the defendant appeared by its attorneys. Upon the call of the case and following some discussion with the attorneys, it was agreed by the parties that the issues presented should be submitted to the court for its consideration and judgment upon certain documents and agreements, which were enumerated in an order which the court entered following the conference with the attorneys at that time.[1]

---

1. The documents and agreements which it was agreed should be considered by the court are stated in the order of the court, as follows:

"1. Copy of complaint filed March 7, 1962, in the Sebastian Chancery Court, Fort Smith District, No. 1121 by Hoerner Boxes, Inc., as plaintiff, against Wayne E. Glenn, George L. Woods, James Slankard and Tom Harris, Individually and as Representatives of the International Brotherhood of Pulp, Sulphite & Paper Mill Workers, as defendants, and filed herein as a part of defendant's motion and amendment.

"2. Decree entered March 8, 1962, in the Sebastian Chancery Court in the cause referred to above, No. 1121.

"3. Opinion of the Sebastian Chancery Court, Fort Smith District, dated July 18, 1962, and filed in case No. 1121, and filed herein as part of defendant's motion and amendment.

"4. Petition for writ of prohibition filed by the defendants in said cause No. 1121 in the Supreme Court of Arkansas for an order prohibiting the Sebastian Chancery Court from entering judgment in accordance with its opinion of July 18, 1962, heretofore referred to in numbered paragraph 3 and filed herein as part of plaintiffs' response to defendant's motion and amendment thereto.

"5. Order of Sebastian Chancery Court entered September 10, 1962, in said cause No. 1121.

"6. Order of Sebastian Chancery Court entered September 11, 1962, in said cause No. 1121.

"7. Application for contempt citation filed in said cause No. 1121 by Hoerner Boxes, Inc., on April 12, 1962.

"8. Order to show cause entered by Sebastian Chancery Court in said cause No. 1121 on April 12, 1962.

"9. Affidavit of Sam E. Sexton, Jr., filed herein on October 26, 1962, and attached as Exhibit 'E' to plaintiffs' response to defendant's motion and amendment thereto.

"10. Affidavit of Arnold Rogers, Manager of defendant, dated October 3 and filed herein on October 4 as Exhibit 'B' to the amendment to defendant's motion.

"11. Affidavit of Edgar E. Bethell, dated October 3, 1962, and filed herein on October 4, 1962, as Exhibit 'C' to defendant's amendment to motion.

"12. Discovery deposition of Arnold Rogers, taken on April 18, 1962, and filed herein today as a part of plaintiffs' response to defendant's motion and amendment.

"13. That, upon the entry by the Sebastian Chancery Court of the order

The plaintiffs are citizens of and reside in Arkansas. The defendant is a corporation organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business in Keokuk, Iowa, but operates a manufacturing establishment in the City of Fort Smith, Arkansas.

The amount involved exceeds $10,000, exclusive of interest and costs.

Since the jurisdiction of the court is based upon diversity of citizenship and the amount involved, and the acts complained of occurred in Fort Smith, Arkansas, the governing law is that of Arkansas.

Before analyzing the facts as reflected by the record, the court believes it would be well to set forth the rules of law applicable to the issues.

In 34 Am.Jur., Malicious Prosecution, Sec. 6, the rule is stated as follows:

" * * * In general, to authorize the maintenance of an action for malicious prosecution, the following elements must be shown: (1) the institution or continuation of original judicial proceedings, either civil or criminal; (2) by, or at the instance of the defendant; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding;

and (6) the suffering of injury or damage as a result of the action or prosecution complained of."

In Malvern Brick & Tile Co. v. Hill, 232 Ark. 1000, 342 S.W.2d 305 (1961), the court at page 1002 of 232 Ark., at page 307 of 342 S.W.2d said:

" * * * In an action for malicious prosecution the burden is on the plaintiff to establish that the defendant acted maliciously and without probable cause, in prosecuting the plaintiff. In short, malice and want of probable cause are essential elements in an action for malicious prosecution. Foster v. Pitts, 63 Ark. 387, 38 S.W. 1114; Kable v. Carey, 135 Ark. 137, 204 S.W. 748, 12 A.L.R. 1227; Keebey v. Stifft, 145 Ark. 8, 224 S.W. 396; Wm. R. Moore D. G. Co. v. Mann, 171 Ark. 350, 284 S.W. 42; Gazzola v. New, 191 Ark. 724, 87 S.W.2d 68."

The relationship of the requisite of malice in instituting the proceedings to that of want of probable cause is stated in the case of Kable v. Carey, 135 Ark. 137, 204 S.W. 748 (1918), where the court at page 142 of 135 Ark., at page 750 of 204 S.W. said:

" * * * To justify an action for malicious prosecution, both want of probable cause and malice must be shown. Where there is want of prob-

of September 10, 1962, heretofore referred to in Paragraph 5, a citation was ordered issued to the persons named in said order, returnable October 17, 1962, but that the return date was subsequently changed to November 29, 1962.

"14. That Bill Powell, Charles Chrissman, Jackie Wallace, Bill Phillips and Harold Qualls, named in said order of September 10, are members of Local No. 656 of the Pulp, Sulphite & Paper Mill Workers of Fort Smith, Arkansas.

"15. That the plaintiff herein, Wayne E. Glenn, is International Representative of the International Brotherhood of Pulp, Sulphite & Paper Mill Workers and is a resident of Little Rock, Arkansas.

"That the plaintiff, George L. Woods, is President of Local 656 hereinbefore referred to in Paragraph 14. He is also a representative of the International Union and is employed at Dixie Cup Division

of American Can Company of Fort Smith, Arkansas. He also represented the employees of the defendant, Hoerner Boxes, Inc., in their contract negotiations which preceded the strike out of which the controversy herein arose. He resides at Van Buren, Arkansas.

"The plaintiff, James Slankard, was an employee of the defendant and a steward of the local union. He resides at Mansfield.

"The plaintiff, Tom Harris, was an employee of the defendant and a steward of the local union. He resides at Van Buren, Arkansas.

"16. That the persons named and found guilty of contempt by the Sebastian Chancery Court as set forth in its opinion of July 18, 1962, have not been retried upon the citation for contempt issued in accordance with the order of September 10, 1962."

able cause, the jury may infer malice, but they cannot properly do so if all the facts disclosed lead to a different conclusion. If the law imputed malice from want of probable cause alone, then there would be no distinct requirement of malice, but want of probable cause would be the sole element necessary."

Practically all of the cases of malicious prosecution considered by the Supreme Court in later years have dealt with the question of whether there was want of probable cause on the part of the defendant. Therefore, the court has not had occasion recently to fully define and develop the requisite of malice on the part of the defendant. Seemingly this requisite has become subsidiary of that of want of probable cause for the reason that if the court finds that there was probable cause, it is not important to find malice, and the action for malicious prosecution could not be maintained. On the other hand, when the courts have found want of probable cause, there is no difficulty to infer malice in order to complete the requisites necessary to support such an action. The last thorough discussion of malice by the Supreme Court of Arkansas appears in the case of Lemay v. Williams, 32 Ark. 166 (1877), in which the court, beginning at page 176, stated:

"In a legal sense any unlawful act done wilfully and purposely to the injury of another, is as against that person, malicious; the proof of malice need not be direct but may be inferred from circumstances.

"The position is fully sustained in the case of Commonwealth v. Snelling, 15 Pick. [Mass.] 321, in which Parker, J., said, 'the term malice in this form of action is not to be considered in the sense of spite or hatred against an individual but of malus animus, and as denoting that the party is actuated by improper and indirect motives,' and in thus holding, Justice Parker substantially sustains the first and second instructions of the plaintiff, in which the court instructed the jury that, 'if the defendant Lemay did not act as a man of caution and prudence, impartially, reasonably and without prejudice and malice, or a desire to gain an undue advantage of the plaintiff, they may find that the order was issued without probable cause, and may infer malice on the part of the defendant.' "

■ Since the two prime requisites to the maintenance of a suit for malicious prosecution are want of probable cause and malice, consideration should be given to what is probable cause. In Gazzola v. New, 191 Ark. 724, 87 S.W.2d 68 (1935), the court at page 732 of 191 Ark., at page 72 of 87 S.W.2d said:

"A probable cause is that state of case where, after ordinary care in ascertaining the facts, one has reasonable grounds for believing that the statements made by him with relation thereto are true, or, as defined by this court in Kansas & Texas Coal Co. v. Galloway, 71 Ark. 351, 74 S.W. 521, 524, 'Probable cause is such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.' "

In Kansas & Texas Coal Company v. Galloway, 71 Ark. 351, 74 S.W. 521 (1903), the court at page 356 of 71 Ark., at page 523 of 74 S.W. said:

"In this kind of proceeding it devolves upon the plaintiff to show affirmatively that there was both malice and a want of probable cause on the part of the defendants in the prosecution of the contempt proceedings against the plaintiff in that suit. It is not the object of the investigation in this suit to determine the guilt or innocence of the defendant in the former or contempt proceedings, but solely to determine whether that proceeding was prosecuted by the defendants in this suit maliciously and without probable cause."

As to the evidence which the court may consider, the Supreme Court of Arkansas in Kansas & Texas Coal Company v. Galloway, supra, in discussing the case of Richards v. Foulke, 3 Ohio 52, decided in 1827, at page 357 of 71 Ark., at page 523 of 74 S.W. said:

" * * * while the case of Richards v. Foulke went off on the familiar doctrine that the best evidence attainable is alone admissible to prove any fact, and also upon another misconception of the law; that is, that the case on trial is to be governed by the facts of the case, other than such facts as were before the court and in the mind of the prosecutor in the former proceeding. In these exceptional cases the fact that malicious prosecutions forms an exception to the rule as to the admission of evidence appears to have been overlooked.

"The true doctrine, approved by all the authorities we have been able to examine, other than those named, is plainly and argumentatively set forth in Bacon v. Towne, 4 Cushing (58 Mass.) 217. In that case the defendants, having opened and stated their defense, offered Mark Doolittle, Esq., the magistrate, to prove what the testimony before him was on the part of the government, to prove probable cause and rebut the allegation of malice; but the presiding judge ruled that this could only be done by the same witnesses who were produced on the stand, or their depositions, except as to testimony then given by the defendants or their wives. To this rejection of evidence the defendants objected. In speaking for the court, Chief Justice Shaw said: 'The courts are of opinion that this exception must be sustained. It was of vital importance for the defendants, in answer to any proof of want of probable cause, to prove affirmatively that they had reasonable and probable cause for the prosecution at the time the proceedings in it were commenced.

" 'Probable cause is such a state of facts in the minds of the prosecutor as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested is guilty. The facts testified to on the examination may have been very influential in raising such suspicion or belief, and are therefore competent evidence to show the ground he had of cause to believe whether they were true or not. They are therefore facts material to the issue, to be proved by any witnesses who can testify to them, as well as by those who testified at the examination. These witnesses may be dead, absent or insane; they may have forgotten them, or refuse to testify to them, or even deny them; it is not the less true that they did so testify, and if the testimony was of a character to evidence a belief or strong suspicion, in the mind of a reasonable man, of the guilt of the accused of the crime charged, they had a direct bearing on the issue of probable cause or not, in the action for malicious prosecution.

" 'Probable cause does not depend on the actual state of the case, in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution.' "

The situation in the Galloway case, supra, was similar to that in the present case. The Supreme Court, in reversing the verdict for the plaintiff in an action for malicious prosecution terminated in the Circuit Court, held that the wording of the decree of the Chancellor, which dismissed the contempt proceedings against the plaintiff and other strikers, was significant in showing probable cause on the part of the defendants, who had instituted the contempt proceedings after they had been granted an injunction on a prior date against the strikers. In the Court's analysis of the U. S. District Judge's opinion, which dismissed the contempt proceedings and which is of the same tenor as the opinion delivered by Chancellor Hugh

M. Bland in the present case, the court, beginning at page 359 of 71 Ark., at page 524 of 74 S.W., said:

"Various statements made in the depositions of Hon. John H. Rogers, judge of the federal court, who heard the contempt case, were excluded by the trial court, mostly on the ground that these statements were the mere conclusions of the judge as to the legal effect of the excluded testimony upon his mind in making up his opinion disposing of the case. In this connection the judge's written opinion filed in the contempt case was excluded on the same ground. These statements and the opinion of the judge disclose the reasons which moved him to decide the case as he did; and it appears from them that as to the charge made in the first affidavit, touching the occurrence on the 3d of July, giving the benefit of the reasonable doubt, as is the rule in criminal trials, with some misgivings and doubt the judge discharged the defendants on the ground that Evans may have had a pistol, as charged against him, and that the defendants in that case may have been in the exercise of lawful duty in attempting to arrest him. Again, as to the matters set forth in the second affidavit, which detail the occurrences on the 5th of July, the evidence on the part of the defendants was to the effect that the said Gus Galloway and the other defendants therein were not present. In other words, Galloway sought to prove an alibi, and the judge's testimony and opinion, sought to be introduced, tended to explain that this alibi, resolving all reasonable doubt in favor of the defendants, was sustained by the court. Granting, then, that the federal judge fully discharged the defendant, as shown by the exhibits to the complaint herein, nevertheless the discharge was on such grounds as to render it of little weight on the question of probable cause, because the evidence of the judge and his written opinion show that he was hesitating as to his conclusion, and the question was only solved by applying the rule of reasonable doubt. If this argument be correct, the judgment of the court in the contempt case not only did not support the charge of a want of probable cause, but really and in fact showed probable cause for the prosecution. This shows the materiality of such evidence, and under the rule laid down in Bacon v. Towne, supra, it was error to exclude it."

■■ An action to recover damages for alleged malicious prosecution or institution of a criminal action is not looked upon with favor, and courts allow recovery only when the requirements limiting the right have been fully complied with. 34 Am.Jur., Malicious Prosecution, Sec. 5. This is especially true where the charge is of a crime which particularly affects the public. In the case of prosecution for crime or citation for contempt, as in the instant case, the reason for the rule is that public policy favors such prosecution and affords such protection to the citizen causing the prosecution of another in good faith and on reasonable grounds as is essential to public justice. 54 C.J.S. Malicious Prosecution § 3, p. 954.

■ The fact that the plaintiffs were acquitted by the Chancery Court of the charge of criminal contempt is not determinative of the question before the court.

In McNeal v. Millar, 143 Ark. 253, 220 S.W. 62 (1920), the court at page 259 of 143 Ark., at page 64 of 220 S.W. said:

"The authorities are divided on the question as to whether or not an acquittal in a criminal prosecution is prima facie evidence of want of probable cause. Case note Emil Bekkeland v. J. A. Lyons, 64 L.R.A. 474–481–484. But our own court is committed to the doctrine that discharge or acquittal is not to be taken as a prima facie showing that there was no probable cause for the prosecution."

In Covill v. Gerschmay, 145 Ark. 269, 224 S.W. 609 (1920), the court at page 272 of 145 Ark., at page 609 of 224 S.W. in quoting from 18 R.C.L. 40, said:

"'Accordingly, the great weight of authority and reason is that the mere fact of the acquittal of a defendant upon the trial of a criminal charge is not prima facie evidence of the want of probable cause for the prosecution. The evidence of acquittal is admissible, of course, in showing that the prosecution has terminated favorably to the accused, but it is generally held that its consideration should be limited to that purpose.'"

The defendant contends that the record before the court conclusively establishes that at the time it caused the "Application for Contempt Citation" to be filed in the Chancery Court that it had probable cause for the institution of the prosecution.

Thus, the question which the court should first determine is, does the record conclusively establish that the defendant did have probable cause for the institution of the contempt proceeding?

In Whipple v. Gorsuch, 82 Ark. 252, 101 S.W. 735, 10 L.R.A.,N.S., 1133 (1907), the court at page 259 of 82 Ark., at page 737 of 101 S.W. said:

"Where the facts relied on to constitute probable cause are undisputed, that question becomes one of law for the court to determine. It should not under that state of the case be submitted to a jury. Lavender v. Hudgens, 32 Ark. 763; 1 Cooley on Torts (3d Ed.) p. 321; 19 Am. & Eng.Enc.L. p. 673; Crescent City Live Stock [Landing & Slaughter House] Co. v. Butchers' Union, 120 U.S. 141, 7 Sup.Ct. 472, 30 L.Ed. 614; Stricker v. Pennsylvania R. R. Co., 60 N.J.Law, 230, 37 Atl. 776.

"A well-founded doubt as to the law may constitute probable cause which would justify a prosecution the same as doubt concerning the facts, if such doubt induces in the mind an honest belief that there are legal grounds for the prosecution."

In Restatement of the Law, Torts, Sec. 673, p. 437, in discussing the separate functions of the court and the jury in cases such as the instant one, the rule is stated:

"* * * Where there is no conflict in the testimony as to what the circumstances were, the court has no need for a finding of the jury. The jury is not called upon to act unless there is a conflict in the testimony which presents an issue of fact for its determination."

The answer to the question of whether the defendant had probable cause to institute the criminal contempt proceedings in the Chancery Court requires an examination of the documents and agreements specified in the court order heretofore mentioned and set forth in footnote 1.

In the original complaint filed by the defendant herein as plaintiff in the Chancery Court against the plaintiffs herein as defendants in the Chancery Court, it was alleged that the plaintiff Wayne E. Glenn is and was the International Representative, duly authorized and acting on behalf of the International Brotherhood of Pulp, Sulphite and Paper Mill Workers, an unincorporated association consisting of numerous individuals engaged in the trade of manufacturing paper and fabricating paper products, and associated together in a common interest; that the plaintiff George L. Woods was and is the President of the Local Union No. 656, and had been acting on behalf of the union in negotiations with the defendant, Hoerner Boxes, Inc.; that the plaintiffs Slankard and Harris were acting as representatives of the members of the union employed by the defendant; that the members of the union were so numerous as to make it impractical to bring them all before the court within a reasonable period of time, and that the plaintiffs, defendants in the Chancery Court, were proper parties to defend the action as representatives of all of the members of the union.

That on or about February 26, 1962, the employees of defendant, who were represented for the purposes of collective bargaining by the International Brotherhood of Pulp, Sulphite and Paper Mill Workers, went on a strike against the defendant and caused pickets to be placed about the premises of the defendant's factory in the City of Fort Smith, and that since that date the plaintiffs and their associates have constantly picketed the premises of the defendant, and in doing so have obstructed access to the defendant's property.

That on or about March 1, and since that date, the plaintiffs, and their agents, servants and employees, had engaged in a course of harassment against defendant and its employees, and in connection therewith had seriously damaged the property of persons attempting to do business with the defendant by placing large quantities of sugar in the gasoline tanks of motor vehicles; by distributing roofing tacks in defendant's driveways; by distributing roofing tacks around the automobiles of defendant's employees; by threatening employees of defendant and other firms attempting to do business with defendant; and by throwing bottles through the windows of the home of one of defendant's employees; that the activities of the plaintiffs, their agents, servants and employees, are all in violation of the laws of this state and constitute unprotected activity, all to the irreparable damage of defendant if permitted to continue.

The defendant herein, the plaintiff in the Chancery Court, prayed that the plaintiffs herein, defendants in the Chancery Court, individually and as representatives of the union, their agents, servants and employees, be temporarily enjoined and restrained from interfering with ingress and egress to and from defendant's factory in the City of Fort Smith; from threatening employees of defendant, of employees of persons with whom defendant is doing business with violence and harm if they work for defendant, or furnish service to the defendant, from threatening and/or damaging the families and homes of the employees of defendant with violence and harm if they continue to work for defendant, from damaging defendant's property, the property of defendant's employees or the property of other persons, firms and corporations doing business with defendant; and that upon final hearing said injunction be made permanent.

In paragraph numbered 15 of the order of the court heretofore referred to (footnote 1), the parties agreed that the plaintiff Wayne E. Glenn, a resident of Little Rock, Arkansas, was and is the International Representative of the International Brotherhood of Pulp, Sulphite & Paper Mill Workers; that the plaintiff George L. Woods, a resident of Van Buren, Arkansas, is President of Local 656 of the union, and is also a representative of the International Union and was and is employed at Dixie Cup Division of American Can Company of Fort Smith, Arkansas, and that he also represented the employees of the defendant in their contract negotiations which preceded the strike, out of which the controversy herein arose; that the plaintiff James Slankard, a resident of Mansfield, Arkansas, and the plaintiff Tom Harris, a resident of Van Buren, Arkansas, were employees of the defendant and stewards of the local union.

The day following the filing of the complaint in the Chancery Court all parties appeared by their present attorneys, and the defendants therein (plaintiffs here) through their attorneys announced in open court that they would consent to the entry of a permanent injunction in this matter. Thereupon and in accordance with the agreement it was by the court:

"CONSIDERED, ORDERED AND DECREED that Wayne E. Glenn, George L. Woods, James Slankard, and Tom Harris, individually, and as representatives of the International Brotherhood of Pulp, Sulphite and Paper Mill Workers, the individual members of said International Brotherhood of Pulp, Sulphite and Paper Mill Workers, their

agents, servants and employees be, and they hereby are permanently enjoined and restrained from physically obstructing ingress and egress to and from the plaintiff's premises at 4600 Newlon Road in the City of Fort Smith, Arkansas; from threatening employees and applicants for employment with violence or damage to the persons or property of such persons if they work for the plaintiff; from threatening or committing acts of violence and/or damage to the homes or property of plaintiff's employees, or to the homes or property of persons, firms or corporations doing business with or rendering service to the plaintiff; from threatening or committing acts of violence or damage to the property of the plaintiff; it is further

"CONSIDERED, ORDERED AND ADJUDGED that the plaintiff recover its costs herein expended.

"And the Court doth retain jurisdiction of this cause for such further orders as might be required in the premises."

The decree became effective as of the date of entry on March 8, 1962, and on April 12, 1962, the defendant herein, Hoerner Boxes, Inc., filed its "Application for Contempt Citation," in which, after setting forth the terms of the decree, it alleged:

"2. That since the entry of said permanent injunction, the defendants, their agents, servants and employees have flagrantly and repeatedly violated the order of this Court by threatening and physically attacking employees of the plaintiff and members of their families; by throwing tacks and nails into the driveway and parking area about plaintiff's plant; by breaking windows, slashing tires and cutting upholstery on cars owned by plaintiff's employees; by defacing and damaging the plant of the plaintiff and the equipment of persons serving the plaintiff and upon plaintiff's premises; and by throwing rocks and other objects at and into the homes of plaintiff's employees, all in violation and disregard of the order of this Court.

"WHEREFORE, plaintiff prays that an order be made citing the defendants to appear on a day certain and show cause why they should not be punished for contempt of the orders of this Court, and be ordered and directed to pay for the damage which they have caused to the property of the plaintiff and its employees."

Upon the filing of the application, the Chancery Court entered the following order to show cause:

"On this 12th day of April, 1962, is presented to the Court the verified Petition of the plaintiff in this cause alleging that the defendants, their agents, servants and employees, have violated the order of this Court entered on the 8th day of March, 1962, and requesting that this Court enter an order directing said defendants to show cause why they should not be punished for contempt by reason of willful disobedience of the order of this Court. The Court being well advised in the premises, finds that the order should issue.

"IT IS THEREFORE ORDERED BY THE COURT that the defendants appear before this Court on the 19th day of April, 1962, at 9 a.m., and show cause why they should not be punished for contempt of the orders of this Court; it is further

"ORDERED that a copy of the Petition and this Order shall by the Sheriff of this County be served upon Wayne E. Glenn, George L. Woods, James Slankard and Tom Harris, and that counsel for plaintiff shall serve a copy upon Sam Sexton, attorney for the defendants."

A trial of the defendants named in the order to show cause (plaintiffs herein) as well as other members of the union began on or about April 19, 1962, and proceeded for two days when the trial

was recessed to a later date, approximately May 30, 1962, and at the conclusion was taken under consideration by the court. On July 18, 1962, the learned Chancellor filed the opinion of the court. At the beginning of the trial, the court was advised that the strike involving the parties had been terminated on April 13, 1962, the day following the issuance of the order to show cause why the members and others should not be punished for contempt. In the meantime, the defendant herein had filed a motion to modify the decree of March 8 to provide a ban on all picketing. Thus the hearing proceeded on the contempt charge. Approximately 38 witnesses testified, and the Chancellor found:

" * * * the picketing was set in a background of violence. The testimony presented violence in sequence, such as, throwing rocks through windows of innocent people, breaking windshields of employees of the Plaintiff, assault and battery on employees, scattering nails and roofing tacks on the driveway and parking lot, slashing tires of employees, pouring sand in oil of cars of employees, threats and intimidation to employees crossing the picket line, stopping cars of employees and calling them vulgar names, slashing seats and interior of automobiles belonging to employees, threatening witnesses to court proceedings, throwing broken glass, mustard, egg shells and baby food against building of Plaintiff, painting in red the word 'Scab' on the back and sides of trailers parked to pick up merchandise on the dock and some threats of violence causing some employees to quit in fear of damage to their persons.

"Some of the above acts were committed by persons who were not members of the Union. The assault and battery on employee, Bill Peters, was by Billy Craig and Billy Jack Stockton, nonunion members, but who were frequently seen on the picket line. Craig and Stockton were arrested, tried and convicted of this assault in Municipal Court, which fine and conviction is now on appeal. It is interesting to note that the testimony reveals that their bond and appeal bond was made by the President of the Local Union of the Brotherhood and the same attorney represented them that defended this suit.

"The only defendants in this case are Wayne E. Glenn, George L. Woods, James Slankard and Tom Harris, individually and as Representatives of the International Brotherhood of Pulp, Sulphite and Paper Mill Workers. Local Union No. 656 is not a party defendant. The agreed Injunction is against the above named Defendants and the Brotherhood and also the individual members of the Brotherhood, their agents, servants and employees enjoining them from committing certain acts set out in the decree."

The court then proceeded to hold that in order to convict any of the defendants that the proof must establish their guilt as charged beyond a reasonable doubt, and further found:

"The preponderance of the evidence produced by the plaintiff was sufficient to order the ban of all picketing, which had become moot, or to cause the Court to strengthen and enlarge the injunctive decree. In other words, this Court must find that the charges of contempt were proven beyond a reasonable doubt. This Court will not in any case condone or excuse violence in a labor dispute. In this case innocent people were caused to suffer. Labor unions have a right to strike so long as it is conducted peacefully and in accord with a court decree. A judge need not be so innocent of the actualities of such an industrial conflict as this testimony discloses to conclude that the use of force, threats, damage to property and sly conduct on such a scale was wholly the uninfluenced acts of a few irresponsible outsiders. If Chancellors are to make decrees in such disputes, only

to have them violated on the excuse that members of the union did not do the particular acts, then we may have to choose between such a decree and a policeman's club."

The court further found that the testimony was not legally sufficient to convict the defendants, who are plaintiffs in the instant action, and further found them not guilty and likewise found that the "Brotherhood was not guilty of criminal contempt," but did find that the following named members of the union, Bill Powell, Charles Crissman, Jackie Wallace, Bill Phillips and Harold Qualls, were guilty of contempt. The court also found that the following named persons not members of the union were guilty: Billy Craig, Billy Jack Stockton, Charley Jones and Billy Qualls.

The court directed that Mr. Sexton, attorney for defendants therein, plaintiffs here, prepare the decree, and that upon the entry of the same by the court commitments would be issued by the Clerk in accordance with the fines and jail sentences set forth in the opinion.

The attorney did not submit the precedent for a decree in accordance with the opinion of the court, and on September 4, 1962, the Chancellor advised the attorney that the court would on September 12, 1962, enter an order in accordance with the opinion, and that the attorney should on that date have the persons named therein in court for sentencing. Upon receiving this notice from the Chancellor, the attorney proceeded to file in the Supreme Court of Arkansas an "Application for Writ of Prohibition" to prohibit the Chancery Court from proceeding further in the case. The chief ground for the application for the writ of prohibition was that the court in its opinion had found certain persons guilty against whom a citation had not been issued. Ark.Stat.Ann., Sec. 34–903 (1962 Repl.), provides:

"Contempts committed in the immediate view and presence of the court, may be punished summarily; in other cases, the party charged shall be notified of the accusation, **and** have a reasonable time to make his defense."

It should be stated that without doubt all of the persons found guilty were fully advised of the entry of the injunctive order of March 8, 1962. No doubt the Chancellor proceeded on the theory that since they were advised of the entry of the injunctive order and of its contents, and were present at the trial upon which the order to show cause or citation had been issued and served upon the officials, and the attorney for the named defendants (plaintiffs herein) was representing the entire membership of the union, that he was justified in proceeding to hear the charges and dispose of them insofar as any person present who was advised of the contents of the injunctive order was concerned.

Upon the filing of the "Application for the Writ of Prohibition" the Chancery Court on September 10, 1962, entered an order by which it withdrew its opinion which had been filed on July 18, 1962, and further directed orders to show cause or citations be issued for all of the persons which the court had found guilty according to the terms of the opinion, and in the same order set the hearing for October 17, 1962, but at a later date reset the hearing for November 29, 1962.

On the next day, September 11, 1962, the court in accordance with the opinion entered an order acquitting and discharging the defendants Glenn, Woods, Slankard and Harris, plaintiffs herein.

There is no denial by the plaintiffs herein by affidavit or otherwise of the above facts as reflected by the record before the court. It is true that the plaintiffs have alleged in their complaint that the "Application for Contempt Citation" was filed and prosecuted by the defendant herein "maliciously and without probable cause." This bare allegation is not sufficient to refute the facts that existed at the time the application was filed in the Chancery Court by Hoerner Boxes, Inc.

Should a trial of the case be held, the question of the guilt or innocence of

the plaintiffs would not be an issue in determining liability, if any, on the part of the defendant, but the chief question to be determined would be whether the defendant, Hoerner Boxes, Inc., at the time it caused to be filed the "Application for Contempt Citation" had probable cause to believe that the parties had wilfully violated the terms of the injunctive order. The court is convinced that the undisputed facts establish beyond doubt that the defendant did have probable cause for filing the "Application for Contempt Citation."

Another defense alleged by defendant is that the original complaint filed in the Chancery Court was against the plaintiffs, defendants in the Chancery Court, in their representative capacity, and that the injunctive order was against them as officers of the Union and as representatives of the entire Union membership.

In Baskins v. United Mine Workers, 150 Ark. 398, 234 S.W. 464 (1921), the court at page 401 of 150 Ark., at page 465 of 234 S.W. said:

"There is no principle better settled than that an unincorporated association cannot, in the absence of a statute authorizing it, be sued in its society or company name, but all the members must·be made parties, since such bodies have, in the absence of statute, no legal entity distinct from that of their members."

At page 402 of 150 Ark., at page 465 of 234 S.W. the court said:

"It is within the power of a court of equity to name as defendants in certain classes of cases a few individuals who are in fact the representatives of a large class having a common interest or a common right —a class too large to be brought into court by a service on the individuals composing the class."

In Massey, Trustee, v. Rogers, 232 Ark. 110, 334 S.W.2d 664, (1960), the court at page 111 of 232 Ark., at page 665 of 334 S.W.2d said:

"An unincorporated association cannot be sued in its society name; so a representative proceeding is a usual and proper method of bringing suit against such an organization."

Ark.Stat.Ann., Sec. 27–809 (1962 Repl.), provides:

"Where the question is one of a common or general interest of many persons, or where the parties are numerous, and it is impracticable to bring all before the court within a reasonable time, one or more may sue or defend for the benefit of all."

In Smith v. Arkansas Motor Freight Lines, Inc., 214 Ark. 553, 217 S.W.2d 249 (1949), the court at page 554 of 214 Ark., at page 249 of 217 S.W.2d said:

"We think the union officials could properly bring a representative action, without joining all members of the organization. Such a suit is authorized when the parties are numerous and it is impractical to bring all before the court. 3 Ark.Stats. 1947, § 27–809. While we have not passed upon this particular question, it is generally held that suits by or against unincorporated labor unions may be cast in representative form. O'Jay Spread Co. v. Hicks, 185 Ga. 507, 195 S.E. 564; Carpenters' Union v. Citizens' Committee, 333 Ill. 225, 164 N.E. 393, 63 A.L.R. 157; A. F. of L. v. Buck's Stove & Range Co., 33 App.D.C. 83, 32 L.R.A.,N.S., 748, appeal dismissed, 219 U.S. 581, 31 S.Ct. 472, 55 L.Ed. 345. Here the complaint, construed liberally on demurrer, sufficiently asserted that the representative nature of the action was due to the fact that the union members were too numerous to be joined."

In Holthoff v. State Bank & Trust Co. of Wellston, Mo. (Johnson v. Kersh Lake Drainage District; Fish v. Kersh Lake Drainage District), 208 Ark. 307, 186 S.W.2d 162 (1945), the court at page 315 of 208 Ark., at page 165 of 186 S.W. 2d said:

"The term 'class suit' is an application of the doctrine of virtual representation as recognized in Section 1314 of Pope's Digest, and as applied in Conner v. Heaton, 205 Ark. 269, 168 S.W.2d 399. See [Conner] Connor v. Thornton, [207] Ark. [1113]. 184 S.W.2d 589 [decided by this court January 8, 1945]. See also 47 C.J. pages 40 to 52; and 21 C.J. pages 284 to 296; and 39 Am.Juris., pages 917 to 928; and 30 Am.Juris., page 962. Those who filed the first Fish suit as representatives of a class, and those who defended the first Holthoff suit, defended it as representatives of a class. The prosecution in the first instance and the defense in the second instance was each bona fide for the entire class and with all diligence; so the entire class is bound by the final result. The rule is thus stated in 39 Am. Juris. 919:

" 'In such a case a judgment in favor of the parties representing the general class is operative under the doctrine of res judicata in favor of all who are thus represented, and a judgment against those parties is operative also against those represented'."

The only feasible or proper manner that the defendant here could have proceeded against the officers and members of the Union was to proceed against certain individuals as representatives of the membership. Certainly the plaintiffs in the instant action were the proper individuals to proceed against in the Chancery Court to obtain the injunctive order. The fact that these plaintiffs were sued in the Chancery Court in their individual capacity as well as representatives of the class is immaterial for the reason that the entire Chancery Court complaint was directed against the members of the striking Union. Had the plaintiffs in the instant suit not been acting as representatives of the Union, they doubtlessly would not have been named as parties defendant in the Chancery Court suit, but they were named and proceeded

against as members of a class. Since that was the basis of the complaint against them, it would be strange indeed if they could now successfully contend that they were damaged personally and that Hoerner Boxes, Inc., did not have probable cause to take such action as was necessary to effectuate the decree of the Chancery Court.

The facts developed in the trial in the Chancery Court disclosed an intolerable situation caused by a violation of the injunctive order by not only members of the Union represented by the plaintiffs in this action, but also outsiders who frequented the picket line.

█ The mere fact that the plaintiffs in the instant action were acquitted in the trial for criminal contempt because the evidence did not show beyond a reasonable doubt that they, personally, engaged in any of the enjoined acts does not authorize them to divest themselves of their representative capacity and claim that the action against them was a personal action, and that they were personally injured by reason of the filing of the "Application for Contempt Citation." It was necessary that the "Application for Contempt Citation" be filed against the four individuals in order that the class action procedure for the enforcement of the injunctive decree of the Chancery Court be made effective.

As an additional defense the defendant contends that it caused to be filed the "Application for Contempt Citation" on the advice of its counsel, "which advice was rendered to the defendant on the basis of a full disclosure by defendant of all facts available to it in connection with the situation at hand."

In Jennings Motors v. Burchfield, 182 Ark. 1047, 34 S.W.2d 455, (1931), the rule governing the application of this defense is stated at page 1049 of 182 Ark., at page 455 of 34 S.W.2d as follows:

"It is a complete defense to an action for malicious prosecution if the defendant in the action instituted the prosecution upon the advice of a prosecutor or counsel learned in the

law after truly laying all of the facts in his possession before him, or them. Randleman v. Johnson, 125 Ark. 54, 187 S.W. 626; Hall v. Adams, 128 Ark. 116, 119, 193 S.W. 520. The reason of this rule is that when one truly lays all the facts in his possession before a prosecutor or an attorney and follows his or their advice, the law conclusively presumes the existence of probable cause, the lack of which is a necessary element in a suit for malicious prosecution. St. Louis, I. M. & S. Ry. Co. v. Wallin, 71 Ark. 422, 75 S.W. 477; L. B. Price Mercantile Co. v. Cuilla, 100 Ark. 316, 141 S.W. 194; Price v. Morris, 122 Ark. 382, 183 S.W. 180."

There is attached to the amendment to defendant's motion the affidavit of Arnold Rogers, who at all times material was the manager of the defendant, in which the affiant states:

"2. On various occasions over a period of time after the original injunctive relief had been granted, I discussed the situation involving labor difficulties at Hoerner Boxes, Inc., with our attorney, Edgar E. Bethell of Fort Smith. As a new incident would arise, I would either call him or see him and discuss it with him, revealing to Mr. Bethell all the facts about the incident which were then known to me. I followed this procedure conscientiously and relied entirely on his advice and counsel. Eventually, based on the various incidents and violence which had occurred, and based on the facts which I knew and which had been revealed to him, Mr. Bethell recommended that the 'application for contempt citation' be filed, and I accepted his recommendation. He prepared the 'application for contempt citation' and filed it."

Also attached is an affidavit of Edgar E. Bethell, counsel for defendant, in which he states:

"2. Over a period of time, preceding the filing of the 'application for contempt citation' in the Chancery Court of Sebastian County, I received telephone calls and had conferences with Arnold Rogers, Manager of Hoerner Boxes, Inc., of Fort Smith. These conferences involved the labor situation at Hoerner Boxes, Inc., the various incidents which were taking place there, the violence which had accompanied the situation, and the activities of various Union members in connection therewith. Based on the information available to me, and available to Mr. Rogers, I advised that the 'application for contempt citation' be filed, and we prepared and filed it."

Attached to the plaintiffs' response to the defendant's motion and amendment thereto is an affidavit of Sam E. Sexton, Jr., the attorney for the plaintiffs. In that affidavit he states that before the time of the trial on the "Application for Contempt Citation" and during the time the trial had been recessed, that "Mr. Bethell stated to me that he had advised Hoerner Boxes, Inc. against bringing contempt prosecutions against Wayne E. Glenn, George L. Woods, James Slankard and Tom Harris."

■ Thus, there appears to be a question of fact, which the court is not authorized to decide in considering a motion for summary judgment, on the question as to whether the "Application for Contempt Citation" was directed to be filed solely upon the advice of counsel, and therefore the court, in the consideration of the motion and amendment thereto for summary judgment, has disregarded entirely the contention of defendant that it caused to be filed the "Application for Contempt Citation" upon the advice of its counsel.

However, even though a question of fact exists relative to that defense, such factual question does not militate in anywise against the other contentions of defendant hereinbefore discussed, and the court is convinced that there is no genuine issue as to whether the defendant had probable cause independent of its consultation with its attorney, and that it had the legal right to file the "Applica-

tion for Contempt Citation" against the plaintiffs in their representative capacity. Therefore the defendant is entitled to judgment as a matter of law.

An order is being entered today sustaining the motion and the amendment thereto of defendant and dismissing the complaint of plaintiffs.